IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**VALERIE MARTINEZ,**

  **Plaintiff,**

**v.**

**NICK NARANJO, individually and in his
official capacity as a Member of the
Jemez Mountains Electrical Cooperative;
LEO MARQUEZ, individually and in his
official capacity as a Member of the
Jemez Mountains Electrical Cooperative;
DONNA MONTOYA-TRUJILLO, individually and in her
official capacity as the Acting General Member of the
Jemez Mountains Electrical Cooperative;
LAURA RENDON, individually and in her
official capacity as Executive Assistant to the Member of the
Jemez Mountains Electrical Cooperative Board of Directors; and the
JEMEZ MOUNTAINS ELECTRICAL COOPERATIVE.**

  **Defendants.**

**COMPLAINT FOR DAMAGES ARISING FROM
CONSPIRACY TO INTERFERE WITH EMPLOYMENT,
DEFAMATION/SLANDER/INVASION OF PRIVACY,
VIOLATION OF FIRST AMENDMENT RIGHTS,
VIOLATION OF EQUAL PROTECTION, VIOLATION OF 42 U.S.C. 1985 AND
VIOLATION OF THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT.**

  1. Plaintiff's complaint seeks damages caused by Defendants' conspired efforts to deprive Plaintiff of her First Amendment right of association, to violate 42 U.S.C.§ 1985 and deny her equal protection under the law, as well as their conspired efforts to interfere with Plaintiff's employment and defame/slander her.

**JURISDICTION AND VENUE**

  2. This action arises under the First and Fourteenth Amendments of the United States Constitution, and 28 U.S.C. § 1343, 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the Parties pursuant of 28 U.S.C. §§ 1331 and 1343.

4. The Court has authority to grant the requested relief pursuant to 28 U.S.C. §1343(a)(1) and (2) and to redress the deprivation under 28 U.S.C. § 1343(a)(3).

5. This Court has pendent jurisdiction over Plaintiff's state claims per 28 U.S.C. § 1367.

6. Venue lies in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

7. Plaintiff, Valerie Martinez, was the Director of Member Services of the Jemez Mountains Electric Cooperative at all times relevant to this Complaint, until her sudden termination on October 27, 2017.  Ms. Martinez resides in Espanola, New Mexico.

8. Donna Montoya-Trujillo was the acting general manager of the Jemez Mountains Electric Cooperative at the time she engaged in the conduct described in the complaint. Montoya-Trujillo is a resident of Cuba, New Mexico

9. Nick Naranjo was and is a Board Member of the Jemez Mountains Electric Cooperative at all times relevant to the Complaint.

10. Leo Marques Naranjo was and is a Board Member of the Jemez Mountains Electric Cooperative at all times relevant to the Complaint.

11. Laura Rendon was and is the Executive Assistant to the Board of the Jemez Mountains Electric Cooperative at all times relevant to the Complaint.  Upon information and belief, Defendant Rendon resides in Cuba, New Mexico.

12. Jemez Mountains Electric Cooperative is a quasi-municipal entity operating pursuant to the Rural Electric Cooperative Act. The COOP has offices in Espanola, Jemez Springs, and Cuba, New Mexico.

## BACKGROUND FACTS

13. Jemez Mountains Electric Cooperative (Coop) was organized pursuant to the Rural Electric Cooperative Act in 1939. The Coop is overseen by the Public Regulatory Commission.

14. The Board of the Coop must adhere to Board of Trustee Policies (BOTs).

15. The requirements of BOT 102, 103 and 107 were reviewed with each Board member on July 28, 2017, and thus each Board member was aware of its obligations and responsibilities provided for in those BOTs.

16. BOT 107 provides that "Information about consumer accounts, trustee, and employee records must be kept in complete confidence."

17. BOT 107 also provides that "Information relative to consumers, trustees, or employees may not be given to anyone except authorized Cooperative employees or as authorized in writing by the respective consumers, trustees, or employees."

18. BOT 107 provides that "information to third parties may only be provided upon written instruction to the General Manager."

19. BOT 102 provides that all Trustees are required to act:

> as fiduciaries, members of the BOT must not put themselves in a position where their interests and duties conflict with the duties they owe to JEC; their actions must be transparent and accountable to members and JMEC; BOT members must act honestly and in good faith to avoid placing themselves in a precarious positions; all questions should be addressed openly and honestly to ensure that actions are in the best interests of JMEC. All JMEC members of the Board of Trustees must disclose any actual or potential conflicts of interest; maintain transparency.

20. BOT 103 provides that the "business and affairs of JMEC shall be managed by the Board of Trustees, which shall exercise all the powers of JMEC except such as are by law and JMEC bylaws."

21. At no time before October 27, 2017, did JMEC Board of Trustees discuss or vote on restructuring positions in the JMEC.

22. At no time before October 27, 2017, did the Board of Trustees for JMEC vote or take action to eliminate positions in JMEC, including but not limited to the position of Director, Member Services.

## GENERAL AVERMENTS APPLICABLE TO ALL CAUSES OF ACTION

23. Each paragraph above is incorporated herein.

24. Plaintiff accepted a position with Jemez Mountains Electric Cooperative (Coop) on or about July 17, 2017, As the Director of Member Services.

25. At the time Plaintiff accepted the Coop position, she had 29 years of experience performing the same or similar work with a variety of establishments including banks and commercial programs.

26. At the time Plaintiff was hired by the Coop, her direct supervisor was Joseph Sanchez, the General Manager (GM) of the Coop.

27. Joseph Sanchez was the GM of the Coop for many years up through October 18, 2017. He was intimately familiar with and ran the general operations at the Coop.

28. Through October 18, 2017, Donna Montoya-Trujillo was the Assistance GM.

29. Plaintiff worked with Sanchez and Donna Montoya-Trujillo in the normal course of her employment.

30. In August and September, Plaintiff was reviewing small financial transactions with Donna Montoya-Trujillo, involving approximately $30,000 in transactions. Plaintiff questioned several of the transactions and expenditures of Board member Naranjo and others.

31. Plaintiff also began reviewing and questioning payment of funds to employees authorized by certain board members and which were unsupported by documentation. She specifically attempted to raise concerns to Donna Montoya-Trujillo about the unsupported use of funds in a Coop account containing more than $100,000. Montoya-Trujillo would not discuss the questionable expenditures.

32. Plaintiff also questioned to Montoya-Trujillo and others, the number of friends and family members of Nick Naranjo working at the Coop.

33. A month after Plaintiff was hired at the Coop, a board member (Lucas Cordova) approached her in her office. Mr. Cordova cautioned Plaintiff that the Coop "had a very political board" and asked Plaintiff if she fully understood what he meant.

34. In mid-September, GM Sanchez disclosed to the Plaintiff that he had been asked and was opting to seek election as the State Representative for District 40. The disclosure was at the Coop offices.

35. Plaintiff offered to help in any way she could to assist Sanchez in his campaign, while on her personal time.

36. Mr. Sanchez left because he was asked to run for the New Mexico State Representative position for District 40.

37. Under Coop policy, Sanchez could only remain in his position if the Board approved the dual activity.

38. Nick Naranjo and Leo Marques met with Sanchez in his office and stated that they, as Board members, would not support his continued employment with the Coop if he ran for office.

39. Because Nick Naranjo and Leo Marques would not support Sanchez' run for office, Sanchez was forced to leave his position.

40. Barney Trujillo ran against Nick Salazar in the previous election for State Representative of District 40, and lost.

41. Barney Trujillo is running again for State Representative of District 40, against Joseph Sanchez.

42. Barney Trujillo is currently a county commissioner with Nick Naranjo's brother, Alex Naranjo.

43. Nick Naranjo desired for Barney Trujillo obtain the State Representative seat being vacated by Nick Salazar and for which Sanchez was running. Naranjo made this goal known to the public.

44. Nick Naranjo is a significant supporter of Barney Trujillo's, engaging in fund raising and seeking votes.

45. Because Naranjo would not support his continued employment while running against Naranjo's desired candidate, GM Sanchez provided 3-weeks notice and left his position as GM on October 18, 2017.

46. While Plaintiff attended a training conference during the week of October 9, 2017, in Albuquerque with Nick Naranjo, Naranjo told Plaintiff he "could save a lot of money by getting rid of Joseph and also getting rid of [Plaintiff]."

47. Donna Montoya-Trujillo became the Acting GM when Joseph Sanchez left.

48. On or about October 19, 2017, Donna Montoya-Trujillo requested Plaintiff's credit card.

49. Donna Montoya-Trujillo had been the Acting GM for only 1 day when she took Plaintiff's credit card.

50. Donna Montoya-Trujillo took the credit card under false premises, stating that they were going re-bid for the credit card program.

51. Plaintiff's credit card was the only credit card taken at the Coop at that time, by Donna Montoya-Trujillo.

52. The Coop did not re-bid for credit card services as falsely asserted by Donna Montoya-Trujillo.

53. Shortly after taking Plaintiff's credit card, Plaintiff heard Donna Montoya-Trujillo on the phone stating "I picked up her credit card." Upon information and belief that telephone call and conversation was with Nick Naranjo.

54. On October 22, 2017, Plaintiff attended a political organization meeting to assist in Sanchez's run for Office. Plaintiff joined the committee to assist in his campaign. That information was made public.

55. On Friday, October 27, 2017, Donna Montoya Trujillo approached Plaintiff in her office at approximately 4:00 p.m.

56. Donna Montoya-Trujillo issued a termination letter stating that the Jemez Mountains Electric Cooperative, Inc. Director of Member Services position was being eliminated immediately and she was no longer needed.

57. Donna Montoya-Trujillo stated the elimination of the Director of Member Services was to restructure the Coop.

58. Plaintiff was in management as the Director of Member Services, and never had restructuring, potential restructuring or elimination of positions been discussed in weekly management meetings.

59. No management discussions about restructuring had occurred before October 18, 2017. Such discussion would have been within the purview of Joseph Sanchez, who had left employment only 9 days earlier.

60. There was never a board action taken to eliminate Plaintiff's position, initiate a RIF and/or restructure.

61. There was in fact, no plan to restructure the Coop at the time Donna Montoya-Trujillo gave Plaintiff the termination notice stating that her position was being eliminated and the Coop was restructuring.

62. There has been no restructuring to date.

63. Donna Montoya-Trujillo was the acting general manager for only one week when she acted to remove Plaintiff.

64. Nick Naranjo, Coop Board member, desired to have Plaintiff removed because Plaintiff become aware in her management position that Naranjo hired or demanded that members of his family and close friends be hired into positions in the Coop.

65. Nick Naranjo also desired Plaintiff's termination because she was tracking and questioning certain expenses and use of Coop funds.

66. Nick Naranjo desired Plaintiff's removal also because Plaintiff was supporting and assisting a different political candidate.

67. Nick Naranjo enlisted Donna Montoya-Trujillo to assist him to remove Plaintiff from her position as the Director of Member Services.

68. Donna Montoya-Trujillo and Naranjo agreed to create and/or make false allegations against Plaintiff to propose to the Board of the Coop her removal and thus effect her termination from Coop employment.

69. Upon information and belief, Naranjo enlisted Leo Marques in the conspiracy to create and/or make false allegations against Plaintiff and to engage in a campaign to discredit her with the intent to destroy employment and employment prospects in the community.

70. Nick Naranjo and Montoya-Trujillo created false information about Plaintiff. Marques assisted and/or was aware of the false information created about Plaintiff to cause her removal from JMEC employment.

71. Naranjo, Marques and Donna Montoya-Trujillo then planned for the latter to present the false information during a Coop meeting, to support removing Plaintiff.

72. On October 27, 2017, Donna Montoya-Trujillo disclosed false information about Plaintiff to the Coop Board members. The false information included allegations that:

   a. A non-Coop employee was in Plaintiff's company car without approval or authorization contrary to Coop policies, on one occasion;
   b. Plaintiff improperly purchased tickets for a UNM game (Lobos v. Eagles) for Coop Employees;
   c. Improper usage of her credit card.

73. Montoya-Trujillo disclosed the false information about Plaintiff to cause Plaintiff's removal as she, Nick Naranjo and Leo Marques had conspired and planned.

74. Coop policies do not prohibit non-employees from being in a Coop vehicle.

75. Despite the lack of any policy that prohibits non-employee's presence in the vehicle, Plaintiff never had a non-Coop employee in her business vehicle without authority. On one occasion, Plaintiff's husband was allowed to travel with her on a business training. The former General Manager, Joseph Sanchez expressly authorized such vehicle use.

76. On or about September 25, 2017, Nick Naranjo and other Coop Board members traveled to the NORA Cooperative meeting in Chama, New Mexico. In the Coop vehicle was a non-employee traveling with them.

77. Plaintiff had worked on purchasing tickets for a Lobos game at the request of Joseph Sanchez, the former manager of the Coop, as an employee team-building event. Plaintiff had been tasked with getting tickets for several months before she was terminated.

78. Plaintiff never purchased the Lobos ticket, despite the ongoing employee event project.

79. Plaintiff could not purchase any tickets as Montoya-Trujillo had possession of Plaintiff's credit card. Such tickets were not available for group purchase until October 23, 2017, 4 days after Donna Montoya-Trujillo took Plaintiff's credit card.

80. Plaintiff only used her Coop credit card for appropriate and authorized purposes. Each purchase had been expressly approved by the former GM, Joseph Sanchez.

81. Plaintiff has had conversations with several board members about the statements made by Donna Montoya-Trujillo during the executive session in which she disclosed false and defamatory information about Plaintiff. Each Board member confirmed that Donna Montoya-Trujillo provided information about Plaintiff's alleged misuse of her credit card and using her vehicle.

82. Each member Plaintiff spoke with confirmed that during the meeting, Donna Montoya-Trujillo continually looked at Nick Naranjo and/or Leo Marques for affirmation during Donna Montoya-Trujillo's disclosures.

83. Coop Board members understood that Donna Montoya-Trujillo was removing Plaintiff because of the 3 items that Donna Montoya-Trujillo disclosed to the Board, and which were false.

84. Several Coop Board members have confirmed that there was no restructuring plan or decision to eliminate Plaintiff's position.

85. Donna Montoya-Trujillo, Nick Naranjo and Leo Marques conspired to remove Plaintiff from her position with the Jemez Mountain Electric Cooperative.

86. Montoya-Trujillo fulfilled their conspiracy on October 27, 2017, by terminating Plaintiff.

87. Leo Marques and Nick Naranjo have furthered the conspiracy to cause Plaintiff harm and economic loss by engaging in a campaign to discredit her in the community.

88. On or about October 27, 2017, Leo Marques, Board Member, disclosed personnel information about Plaintiff to his girlfriend and her son, Nico Montoya, consisting of the false bases of why Plaintiff was fired.

89. On or about October 27, 2017, Nico Montoya – the son of Leo Marques' girlfriend – told Plaintiff's son that she had been fired due to improper activity including misusing Plaintiff's Coop credit card and to buy herself things.

90. In November 2017, Leo Marques engaged with Plaintiff's former mother-in-law (Alice R. Martinez) and disclosed derogatory and false employment information about Plaintiff, furthering the conspiracy to discredit and destroy Plaintiff's reputation and employment prospects in the community.

91. In November 2017, Nick Naranjo contacted Plaintiff's former father-in-law (Robert H. Martinez) by telephone and again disclosed derogatory and false employment

information about Plaintiff, furthering the conspiracy to discredit and destroy Plaintiff's reputation and employment prospects in the community.

92.     Another Board member, Harold "Charlie" Trujillo also disclosed the false information, that had been given to him by Donna Montoya-Trujillo relating to Plaintiff's discharge, to members of the public including his brother-in-law Robert Martinez. Martinez further disclosed the false information to other members of the public.

93.     Defendant Laura Rendon disclosed the false personnel information about Plaintiff to members of the public, despite Board policy expressly preventing such disclosures.

94.     Between October of 2017 an December 9, 2017, Laura Rendon disclosed the false personnel information about Plaintiff's termination to Rick Bailey, President of the Norther New Mexico College without any legitimate reason for the disclosures and to cause Plaintiff harm.

95.     Between October of 2017 an December 9, 2017, Laura Rendon disclosed the false personnel information about Plaintiff's termination to Judy Lujan, and employee with KDCE radio without any legitimate reason for the disclosures and to cause Plaintiff harm.

96.     Many members of the community have, since October 27, 2017, relayed to Plaintiff that they were aware she was fired because she misused her credit card and business vehicle. This information has been made public, despite its falsity, and despite that it was disclosed to Board members in an alleged "executive session."

97.     The disclosure of employment based information violates JMEC's own policies.

98.     Nick Naranjo, Leo Marques and Donna Montoya-Trujillo disclosed false information about Plaintiff to defame and slander her reputation and to destroy employment potential in the community.

99. Donna Montoya-Trujillo disclosed false information to the Coop Board with the intent of furthering the conspiracy between her and Nick Naranjo, to terminate Plaintiff's employment, defame, shame and slander Plaintiff.

### CAUSE NO. 1 – MALICIOUS INTERFERENCE WITH EMPLOYMENT BY DEFENDANTS NARANJO. MONTOYA-TRUJILLO AND MARQUES.

100. Plaintiff re-alleges each of the above averments as if set forth in full herein.

101. Defendants Naranjo, Montoya-Trujillo and Marques engaged in purposeful and intentional acts, to create false allegations against Plaintiff and present those allegations to the Coop Board with the intent of depriving Plaintiff of her employment.

102. Defendants intentional actions to fabricate information and present it to the Board of the Coop was done to cause Plaintiff harm, to either deprive her of her constitutional rights of political association or prevent her from engaging in whistleblowing activity. Defendants actions were not justifiable under all the circumstances.

103. Plaintiff's economic/employment and reputation injuries were the proximate result of the intentional actions of Defendants as described throughout the Complaint.

104. Defendants are liable to Plaintiffs for compensatory and punitive damages for their intentional acts.

### CAUSE NO. 2 - DEFAMATION/SLANDER/FALSE LIGHT BY ALL DEFENDANTS

105. Plaintiff re-alleges each of the above averments as if set forth in full herein.

106. Plaintiff has a legitimate and meaningful business, religious, moral and personal interest in maintaining her reputation and good name.

107. The statements made by Defendants to Board members and further disseminated to the public were false and portrayed Plaintiff as one who steals, embezzles and misuses business

resources.

108. The disclosure of false and employment-based information about Plaintiff has lead others to believe that Plaintiff steals, embezzles and/or uses employment resources for personal benefit. Such disclosures have proximately caused Plaintiff to be held up to scorn and contempt.

109. The disclosure of employment-based information about Plaintiff directly violate Board policies.

110. The actions initiated by Defendants and described in the Complaint were intended to present Plaintiff to the public, and had the inevitable effect of presenting Plaintiff to the public, in a false light.

111. Being so portrayed was highly objectionable to Plaintiff, and has caused her great harm.

112. As a proximate result of Defendants' actions, Plaintiff's reputation was injured irreparably.

113. Defendants are liable to Plaintiff for compensatory and punitive damages for holding her out to the public in a false light.

### CAUSE NO. 4 - VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1985

114. Plaintiff re-alleges each of the above averments as if set forth in full herein.

115. Political rights is part of a class of rights that protect individuals' freedom from infringement by governments, social organizations, and private individuals. Such rights ensure one's ability to participate in the civil and political life of the society and state without discrimination, repression or retribution.

116. It is beyond debate that the freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberties assured by the Due Process Clause of the

Fourteenth Amendment.  The freedom of political association is one such protected right.  *See NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460-61 (1958).

117.   The First Amendment of the United States Constitution protects an individual's freedom of expression/freedom of speech and the individual's right to petition her government for redress.

118.   While freedom of association is not explicitly set out in the First Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition. *See, e. g., Baird v. State Bar of Arizona*, 401 U.S. 1, 6 (1971); *NAACP v. Button*, 371 U.S. 415, 430 (1963); *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293, 296 (1961); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) (Harlan, J., for a unanimous Court).

119.   42 U.S.C. § 1985 can also provide a cause of action stemming from First and Fourteenth Amendment violations stemming from a violation of rights of clearly defined classes, *such as supporters of a political candidate." See Conklin v. Lovely*, 834 F.2d 543, 549 (6th Cir. 1987); *also Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).

120.   Defendants conspired to deprive Plaintiff of her right to association and engagement in political activity because she supported a different candidate than Board member Naranjo, and took action to terminate her employment because of such association.

121.   Defendants had no legitimate basis to terminate Plaintiff from her employment.  The basis disclosed by Donna Montoya-Trujillo in the termination letter was false.

122.   The bases disclosed by Donna Montoya-Trujillo to the Board of Trustees to support termination were false.

123.   The bases disclosed to the Board, and basis for termination given to Plaintiff were inconsistent with each other and demonstrate the pretext and intent to deprive Plaintiff of her employment due to her political association.

124. As a direct and proximate result of the deprivations of her right to association and engage in the political process, Plaintiff suffered injuries consisting of her loss of employment, benefits and reputation.

125. The Defendants are also subject to punitive damages for their conduct.

**CAUSE NO. 5 - VIOLATION OF NEW MEXICO'S WHISTLEBLOWER PROTECTION ACT**

126. Plaintiff re-alleges each of the above averments as if set forth in full herein.

127. The Whistleblower Protection Act, NMSA § 10-16c-1 *et seq*. prevents a public employer from engaging in retaliatory action against an employee based on an employee's communications to the employer or third parties about an action that the employee believes in good faith constitutes an unlawful or improper act.

128. Plaintiff, because of her former employment, had expertise in budget, authorized and authorizing expenditures, proper use of public funds, and improper expenditures.

129. Plaintiff within the first 2 months of her employment, began questioning the use of JMEC funds for trips for Naranjo and his wife, the unsupported use of JMEC funds, advances to employees.

130. During a board finance package review in October 2017, Plaintiff questioned the miscellaneous account expenditures. Plaintiff sought information to break down such use of funds from Donna Montoya-Trujillo.

131. Defendants hid information from Plaintiff so that she could not disclose financial improprieties

132. Montoya-Trujillo would not provide information to Plaintiff to perform review, stating she "would get back to" Plaintiff. Plaintiff was denied the ability to further review the financial information before the October 2017 board meeting.

133. Upon information and belief, Donna Montoya-Trujillo disclosed Plaintiff's inquiries further, to Nick Naranjo and/or Leo Marques.

134. Plaintiff was removed shortly after questioning JMEC expenditures, the use of such funds and seeking documentation to support such use of funds.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for:

A.  A trial on the merits before a jury;

B.  A finding that the actions of Defendants described in this Complaint violated Plaintiffs' Constitutional rights under the First Amendment and Fourteenth Amendments of the United States Constitution.

C.  A finding in favor of Plaintiff on each of Plaintiff's causes of action

D.  General and specific compensatory damages according to proof;

E.  Punitive damages in such amount as will sufficiently punish defendants for their willful and malicious conduct and as will serve as an example to prevent a repetition of such conduct in the future;

F.  Interest on such damages awarded at the legal rate from the date of judgment until paid;

G.  An order granting Plaintiffs' costs and attorney fees; and

H.  Any and all other relief that may be appropriate as deemed by this Court.

Respectfully submitted this 1st day of March 2017.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ Dori E. Richards*
Dori E. Richards, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
dorierichards@gmail.com